**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ELDON P., <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | Civil Action No. 20-13463 (MAS) <br><br> **MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court on Plaintiff Eldon P.'s ("Plaintiff")[1] appeal from the Commissioner of the Social Security Administration's (the "Commissioner") final decision, which denied Plaintiff's request for disability insurance benefits and supplemental security income benefits. (ECF No. 1.) The Court has jurisdiction to review this appeal under 42 U.S.C. §§ 405(g) and 1383(c)(3), and reaches its decision without oral argument under Local Civil Rule 78.1. For the reasons below, the Court affirms the Commissioner's decision.

**I.   BACKGROUND**

In this appeal, the Court must answer the evidentiary question of whether substantial evidence supports the Administrative Law Judge's (the "ALJ") determination of Plaintiff's residual functional capacity ("RFC") to perform a full range of work with certain nonexertional

---

[1] The Court identifies Plaintiff by first name and last initial only. *See* D.N.J. Standing Order 2021 10.

limitations. The Court starts by detailing this matter's procedural posture as well as the nature of the ALJ's decision.[2]

### A.   Procedural Posture

Plaintiff filed an application for disability insurance benefits and supplemental security income in August 2017, alleging an onset date of May 2017. (AR 80, 195-206.) Plaintiff's application was denied initially and then later on reconsideration. (*Id.* at 118-23, 127-32.) Thereafter, Plaintiff requested a hearing (*id.* at 133-34), and the ALJ held that hearing on January 7, 2019 (*id.* at 60-79). The ALJ issued a written opinion where he determined that Plaintiff was not disabled. (*Id.* at 35-48.) Plaintiff appealed that decision, and the Administration's Appeals Council denied Plaintiff's request for review. (*Id.* at 1-6, 191-92.) This appeal followed. (ECF No. 1.) Plaintiff filed his opening brief on April 19, 2022 (ECF No. 15), and the Commissioner filed an opposition brief on June 6, 2022 (ECF No. 16). Plaintiff did not reply.

### B.   The ALJ's Decision

In his May 28, 2019 written opinion, the ALJ concluded that Plaintiff was not disabled under the prevailing Administration regulations. (*See generally* AR 35-48.) The ALJ first set forth the Social Security Administration's five-step sequential evaluation process for determining whether an individual is disabled. (*Id.* at 39-40 (citing 20 C.F.R. §§ 404.1520(e), 416.920(e)).) The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through September 30, 2022. (*Id.* at 40.)

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity ("SGA") since the alleged onset date of May 14, 2017. (*Id.* (citing 20 C.F.R. §§ 404.1571 and

---

[2] The Administrative Record ("AR") is found at ECF Nos. 9 through 9-7. The Court will reference the relevant page numbers of the AR and will not reference corresponding ECF page numbers within those files.

416.971).) At step two, the ALJ determined that Plaintiff suffered from several severe impairments, including depression post-traumatic stress disorder ("PTSD"), and sensorineural hearing loss. (*Id.* (citing 20 C.F.R. §§ 404.1520(c), 416.920(c)).) The ALJ also found several non-severe impairments in the record, including allergic rhinitis, xerosis, right and left wrist tendonitis, right elbow epicondylitis, and gastro-esophageal reflux disease. (*Id.* at 41.) At step three, the ALJ determined that Plaintiff lacked an impairment or combination of impairments that met or medically equaled the severity of one of the Social Security Administration's listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 41-43 (citations omitted).) As such, the ALJ determined that Plaintiff's evaluation needed to proceed to the next step. To preface step four, the ALJ conducted an RFC analysis and determined that, despite his impairments, Plaintiff can "perform a full range of work at all exertional levels" but was limited to "perform[ing] simple, routine tasks" and "mak[ing]" simple work-related decisions. (*Id.* at 43-44.) Implementing this RFC analysis at step four, the ALJ determined that Plaintiff was unable to perform any past relevant work. (*Id.* at 46.) Finally, at step five, after considering Plaintiff's age, education, work experience, and RFC, the ALJ found that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform," such as those of a meat clerk, photocopy machine operator, and "sealing and canceling machine operator." (*Id.* at 47-48.)

## II.   LEGAL STANDARD

### A.   Judicial Review of the Commissioner's Decision

The Court has jurisdiction to review this matter under 42 U.S.C. §§ 405(g) and 1383(c)(3). On appeal from the final decision of the Commissioner, the district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); *see also Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir.

2001). To survive judicial review, the Commissioner's decision must be supported by substantial evidence. 42 U.S.C. § 405(g); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence is "relevant evidence [that] a reasonable mind might accept as adequate to support a conclusion" and "more than a mere scintilla." *Richardson*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). To that end, substantial evidence "'may be somewhat less than a preponderance' of the evidence." *Ginsburg v. Richardson*, 436 F.2d 1146, 1148 (3d Cir. 1971) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)).

In reviewing the record for substantial evidence, the Court "may not weigh the evidence or substitute [its own] conclusions for those of the fact-finder." *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005) (internal quotation and citation omitted). Even if the Court would have decided differently, it is bound by the ALJ's decision if it is supported by substantial evidence. *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001). The Court must "review the record as a whole to determine whether substantial evidence supports a factual finding." *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014) (citing *Schaudeck v. Comm'r*, 181 F.3d 429, 431 (3d Cir. 1999)). "Since it is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." *Cotter v. Harris*, 642 F.2d 700, 706-07 (3d Cir. 1981) (internal citation omitted). An ALJ's decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 120 (3d Cir. 2000)).

### B.  Establishing Disability

To be eligible for disability insurance benefits and supplemental security income, claimants must be unable to "engage in any substantial gainful activity by reason of any medically

4

determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 1382c(a)(3)(A), 423(d)(1)(A). Under the statute, claimants are disabled only if their physical or mental impairments are "of such severity that [they are] not only unable to do [their] previous work but cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* §§ 1382c(a)(3)(B), 423(d)(2)(A). A physical or mental impairment is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* §§ 1382c(a)(3)(D), 423(d)(3).

Administration regulations provide a five-step evaluation procedure to determine whether an individual is disabled. *See* 20 C.F.R. § 416.920. For the first step, claimants must establish that they have not engaged in any substantial gainful activity since the onset of their alleged disabilities. *Id.* § 416.920(a)(4)(i). For the second step, claimants must establish that they suffer from a "severe . . . impairment" or "combination of impairments." *Id.* § 416.920(a)(4)(ii). Claimants bear the burden of establishing the first two requirements, and failure to satisfy either one results in a denial of benefits. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). The third step requires that claimants provide evidence that their impairments are equal to at least one of the impairments listed in Appendix 1 of the regulations. 20 C.F.R. § 416.920(a)(4)(iii). If claimants demonstrate that they suffer from a listed impairment or that their severe impairment is equal to a listed impairment, they are presumed to be disabled and entitled to benefits. *Id.* If they cannot so demonstrate, the eligibility analysis proceeds to step four. The fourth step of the analysis requires the ALJ to determine whether claimants' RFC permits them to resume previous employment. *Id.* § 416.920(a)(4)(iv). If claimants' RFC permits previous employment, claimants are not "disabled" and not entitled to benefits. *Id.* § 416.920(f). The burden of persuasion rests with claimants in the

5

first four steps. *Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x 761, 763 (3d Cir. 2009). At the fifth step, the burden shifts to the Commissioner to demonstrate that claimants can perform other work consistent with their medical impairments, age, education, past work experience, and RFC. *Id*. If the Commissioner cannot satisfy this burden, claimants will receive benefits. 20 C.F.R. § 416.920(g).

### III. DISCUSSION

Plaintiff contends that the ALJ miscalculated his RFC, meaning it was not supported by substantial evidence in the record. (Pl.'s Moving Br. 5, ECF No. 15.) Plaintiff makes three distinct but related arguments: (1) the ALJ wrongly excluded the August 2017 medical opinion of Plaintiff's treating psychiatrist; (2) as a result of the ALJ's exclusion of Plaintiff's treating psychiatrist's opinion, the ALJ also failed to give due consideration to the relevant evidence of Plaintiff's partial hospitalization over the course of six months; and (3) the ALJ failed to adequately specify the more recent evidence on which he relies in forging Plaintiff's RFC. (*Id.* at 13-17, 19, 27-28.)

To start, Plaintiff avers that the ALJ erred because he failed to give appropriate weight to the treating psychiatrist's medical opinion regarding Plaintiff's employment ability. (Pl.'s Moving Br. 14-15.) Specifically, the ALJ found that Plaintiff could perform a full range of work despite the treating psychiatrist's opinion that Plaintiff was unable "to engage in any gainful employment and/or occupational training of any kind." (AR 352.) The Court, however, finds that Plaintiff's argument fails.

The Social Security regulations eliminated the hierarchy of medical source opinions that gave preference to treating sources for all claims filed after March 27, 2017. *Nathaniel H. v. Kijakazi*, No. 20-3598, 2021 WL 5413981, at *6 n.7 (D.N.J. Nov. 19, 2021) (citing 20 C.F.R. § 404.1520c(a) (providing, among other things, that the Commissioner will no longer "defer or

give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources"), 416.920c(a) (same)). Instead, the ALJs must consider the persuasiveness of the medical opinions in the record; in doing so, they must evaluate four objective criteria: "[s]upportability," "[c]onsistency," "[l]ength of the treatment relationship," and "extent of the treatment relationship." 20 C.F.R. § 404.1520c.

Here, the Court has little trouble determining that the ALJ properly considered the persuasiveness of the treating psychiatrist's opinion. Most importantly, the ALJ explicitly concluded that the psychiatrist's opinion "did not include specific functional restrictions or descriptions." (AR 46.) Indeed, the psychiatrist's medical opinion, which consisted of a check-the-box conclusion as to Plaintiff's ability to work at the time, was included in a one-page standard examination form. (*Id.* at 352.) Plaintiff submitted the form to support his request for deferral from the "WorkFirst New Jersey" program. (*Id.* at 350-52.) As the ALJ noted, the examination form contained no further information detailing the nature of Plaintiff's "functional restrictions," or, in other words, symptoms of his depression precluding his employability. (*Id.* at 44 (explaining that the ALJ must evaluate "the *intensity, persistence,* [and] *functionally limiting effects*" of the claimant's symptoms to determine restrictions on the claimant's ability to work) (emphasis added).) Rather, the psychiatrist's belief that Plaintiff was unable to participate in gainful employment appears to be related to Plaintiff's partial hospitalization treatment, requiring five-day-a-week care over the course of six months. (*See id.* at 352.) Accordingly, by emphasizing that the doctor's opinion was unsupported by any specific medical findings as to the "functional restrictions," or limiting symptoms of Plaintiff's conditions, the ALJ properly considered, but rejected, this medical opinion in his RFC analysis. (*Id.* at 46.)

Next, Plaintiff argues that the ALJ improperly rejected the remainder of the treating psychiatrist's findings, namely that Plaintiff would require partial hospitalization treatment. (Pl.'s Moving Br. 20.) But a plain reading of the ALJ's written decision illustrates that Plaintiff mischaracterizes the ALJ's analysis. Importantly, Plaintiff's partial hospitalization did not last for twelve months or more and, as the ALJ determined, Plaintiff was able to perform a full range of work during the period in which Plaintiff claims disability. (AR 43-44.) Even still, rather than entirely ignore Plaintiff's partial hospitalization, the ALJ's decision clearly reasons that "with treatment and medication, his conditions improved quickly." (*Id.*) Indeed, the ALJ found that the objective medical evidence embedded in "more recent records was more persuasive in determining the true nature of the claimant's restrictions." (*Id.*); *Johnson v. Comm'r of Soc. Sec.*, 398 F. App'x 727, 736 (3d Cir. 2010) (ruling that the ALJ did not err in rejecting a treating physician's opinion where the physician offered no medical findings in support of his opinion and where his opinion was contradicted by more recent medical records). For example, the ALJ noted that in January 2019, well after his partial hospitalization, the rest of Plaintiff's mental abilities appeared to be at a level supporting employability. (AR 45 ("His affect was congruent, appropriate, full range and reactive. His thought process was within normal limits . . . . [h]e denied suicidal or homicidal ideation. His insight and judgment were good. His cognition was grossly intact.").) The Court, accordingly, concludes that the ALJ properly considered Plaintiff's hospitalization.

To rebut this finding, Plaintiff argues that the Court should reject the ALJ's reliance on these "more recent records," blanketly claiming that the ALJ fails to ever detail the records on which he relied and the role that they played in his RFC determination, thereby falling short of "substantial evidence." (Pl.'s Moving Br. 27-28.) But much to the contrary, this Court readily identifies these recent and relied upon records, which are littered throughout the ALJ's opinion. The ALJ explains, in detail, the consistent results of Plaintiff's mental examinations in August

2017, February 2018, November 2018, and January 2019. (AR 45.) For example, the ALJ noted that, in August 2017, Plaintiff was "alert and fully oriented," "his concentration and attention were intact," "his fund of knowledge, insight, and judgment were fair," and "his memory was intact." (*Id.*) Further, the ALJ explained that Plaintiff's February 2018 mental examination revealed substantially similar findings. (*Id.*) The ALJ emphasized that between February 2018 and November 2018, little changed as to Plaintiff's mental status. (*Id.*) Although Plaintiff "reported being very depressed" in January of 2019, as noted above, Plaintiff's mental abilities appeared to be at a level supporting employability. (*Id.*)

Moreover, contrary to Plaintiff's argument, the ALJ did not solely rely on these "more recent records" as the basis for his RFC determination. (*See* Pl.'s Moving Br. 27-28.) For example, the ALJ extensively describes the allegations contained in Plaintiff's own function report dating back to August 2017, soon after the alleged onset date, that Plaintiff "was able to do laundry and iron . . . shop in stores . . . . did not allege issues understanding . . . could pay attention for a 'reasonably long time'. . . . [and did not have] issues with memory, concentration, completing tasks, or getting along with others." (AR 44.) Pointing to this evidence, as well as the above-mentioned more recent records, the ALJ concluded that after receiving treatment for his severe impairments, Plaintiff displayed no issues with his cognitive or social abilities that would impose greater limitations than reflected in his RFC. (*Id.* at 45.) The ALJ's opinion, accordingly, is well-supported by substantial evidence in the record.

At bottom, the ALJ adequately evaluated the record and made an RFC determination that is supported by substantial evidence. To be sure, ALJs have discretion to determine a claimant's RFC so long as they review, consider, and support their findings with evidence in the record. *Chandler v. Comm'r Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC

9

determinations.") (citation omitted). Consequently, the Court finds no reason to reverse or remand the ALJ's decision.

## IV. CONCLUSION

Having reviewed the record as a whole, the Court affirms the ALJ's decision. The Court will issue an order consistent with this Memorandum Opinion.

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE